UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEATHER LOVELL,

                         Plaintiff,

     -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS, et al.,

                        Defendants.

14 cv 3359 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Heather Lovell ("Plaintiff") brings this 42 U.S.C. § 1983 action against defendants Sabina Kaplan, Superintendent of Bedford Hills Correctional Facility ("Superintendent Kaplan"), Sergeant Brett Fusco ("Fusco"), Corrections Officer Eric Ford ("Ford"), and Lori Goldstein, M.D. ("Dr. Goldstein") (collectively, "State Defendants").[1] Before the Court is the State Defendants' motion to dismiss. Plaintiff has not submitted opposition to this motion. For the following reasons, the State Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The following facts are derived from the § 1983 Complaint filed by Plaintiff and the declaration of Jeffery Hale, Assistant Director of the Inmate Grievance Program at the New York State Department of Corrections and Community Supervision ("DOCS"), submitted by Defendants in support of their motion to dismiss.

---

[1] An additional defendant, John Doe, is listed on the docket. However, this appears to be an administrative error as the complaint only lists four (4) defendants and does not have any allegations as to a fifth defendant, "John Doe."

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/27/2015

On November 14, 2008, Plaintiff was relocated to the long-term care medical unit at Bedford Hills due to her diabetes, severe allergies, dizziness, and lasting effects of a broken foot. (Compl., p. 3.) To properly manage her diabetes, Plaintiff requires three meals per day, as well as servings of fruit and juice "4 to 5 times a day, plus a late night snack." (*Id.*, p. 4.) Plaintiff alleges that defendants Fusco and Ford constantly threaten and harass her because of her special medical needs. (*Id.*, p. 3.) Specifically, Plaintiff claims that Fusco and Ford insist that Plaintiff is making "hooch," or alcohol, with her provisions of fruit and juice. (*Id.*)

Plaintiff contends that Fusco and Ford "scream[ed] and rant[ed]" about her making hooch, subjected her to constant room searches, and confiscated her food and juice. (*Id.*, p. 3– 4.) Fusco and Ford allegedly wrote Plaintiff multiple Tier III misbehavior tickets[2] and subjected her to keeplock a number of times.[3] (*Id.*, p. 3.) Additionally, Plaintiff claims that Ford threatened to "smash" her in the face and Fusco promised to "make sure [she] go[es] to the box."[4] (*Id.*)

While most of Plaintiff's claims involve Ford and Fusco, the complaint also alleges that Dr. Goldstein failed to provide her with a diabetic diet, causing her blood sugar to go "off the scale." (*Id.*, p. 4.) Finally, Plaintiff alleges that Superintendent Kaplan was made aware of these serious issues but has not taken action. (*Id.*)

---

[2] Pursuant to 7 N.Y.C.R.R. § 270.3, there are three "tiers of disciplinary hearings," which "serve the purpose of determining allegations of rule violations contained in misbehavior reports[.]" 7 N.Y.C.C.R. § 270.3(a). "Tier III hearings concern the most serious violations and may result in unlimited [Special Housing Unit] confinement (up to the length of the sentence) and recommended loss of 'good time' credits." *Hynes v. Squillace*, 143 F.3d 653, 655 n. 1 (2d Cir. 1998).

[3] Keeplock is "a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

[4] The Court presumes that "box" is a reference to keeplock.

In her time at the long-term care unit, Plaintiff has filed three grievances with the Inmate Grievance Resolution Committee ("IGRC"). (Declaration of Jeffery Hale, December 18, 2014 ("Hale Decl."), ¶9.) Only one of those grievances is relevant to the current complaint: BH-18817-14, dated March 9, 2014 (the "March Grievance"). (*Id.* ¶12; Exhibit D to the Hale Decl., p. 4.) The instant action in large part restates Plaintiff's complaints that were asserted in the March Grievance. The IGRC was unable to resolve the grievance, and the grievance was referred to the superintendent. (Exhibit D, pp. 6, 12.) On May 1, 2014, Superintendent Kaplan released her decision, finding that Plaintiff had been issued a Tier III misbehavior report and had been found "not guilty." (*Id.*, p. 2.) Superintendent Kaplan's decision was silent as to Plaintiff's claims of harassment by Fusco and Ford. (*Id.*) Plaintiff did not appeal Superintendent Kaplan's decision to the Central Office Review Committee ("CORC"). (*Id.*)

### STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not

3

extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555.

Where a Plaintiff fails to oppose a motion to dismiss a complaint for failure to state a claim, automatic dismissal is not merited. In such a situation, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–323 (2d Cir. 2000). As with all Rule 12(b)(6) motions, on an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Id.* at 322. "If a complaint is sufficient to state a claim on which relief can be granted on its face, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Accurate Grading Quality Assur., Inc. v. Thorpe,* No. 12 CIV. 1343 ALC, 2013 WL 1234836, at *5 (S.D.N.Y. Mar. 26, 2013).

## DISCUSSION

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09 CIV. 9199 PGG, 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)) (internal quotation marks and citations omitted). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion [,]' ... [t]he exhaustion inquiry ... requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F.Supp.2d 442, 447 (S.D.N.Y. 2007); *Veloz v. New York*, 339 F.Supp.2d 505, 514 (S.D.N.Y. 2004). The defendants bear the burden of demonstrating that Plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F.Supp.2d 518, 523 (S.D.N.Y. 2009).

A person detained or incarcerated at a DOCS facility must exhaust all of the steps of the DOC Inmate Grievance Resolution Program ("IGRP"). *See Robinson v. Henschel*, No. 10 Civ. 6212(PGG), 2014 WL 1257287, at *10 (S.D.N.Y. March 26, 2014) ("the PLRA requires complete exhaustion in accordance with the administrative procedures within [DOCS]") (internal quotation marks and citations omitted). The IGRP provides a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGRC, (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC"). *See Espinal*, 558 F.3d at 125 (citing N.Y. Comp. Codes R. & Regs., tit. 7, § 701.7 (1999)).

5

With regards to the alleged conduct of Fusco and Ford, Plaintiff submitted the March Grievance to the IGRC and received a decision from the superintendent. Though Plaintiff's claim was processed as a "false accusation" grievance with regards to her misbehavior report, this does not prevent the IGRC from addressing the remaining claims of harassment, unconstitutional searches, deprivation of property, etc. A Plaintiff does not have to "articulate legal theories" in order to exhaust her administrative remedies; "it is sufficient [if her] grievance adequately described the alleged misconduct." *Espinal*, 558 F.3d at 128 (internal citations omitted). Thus, Plaintiff sufficiently raised all issues with regards to Fusco and Ford with the IGRC. Plaintiff failed, however, to exhaust all steps of the administrative relief because she failed to appeal the superintendent's decision to the CORC. *See Bain v. Velez*, No. 09 CIV. 2316 (DLC), 2010 WL 624956, at *4 (S.D.N.Y. Feb. 19, 2010) ("In choosing not to appeal to the CORC the superintendent's unresponsiveness to his grievance, plaintiff failed to "properly exhaust" his remedies as required by the PLRA."). Therefore, Plaintiff has not fulfilled the PLRA's exhaustion requirement with regards to her claims against Fusco and Ford, and the Court dismisses these claims accordingly.

With regards to Plaintiff's claims against Dr. Goldstein and Superintendent Kaplan, Plaintiff has not filed any grievance whatsoever.[5] The March Grievance does not contain any allegations of misconduct on behalf of Dr. Goldstein or Superintendent Kaplan. Because Plaintiff also failed to properly exhaust her remedies as required by the PLRA with regards to the claims against Dr. Goldstein and Superintendent Kaplan, the Court similarly dismisses these claims.

---

[5] Plaintiff has filed three grievances since 2008, but none of them refer to misconduct on behalf of Dr. Goldstein or Superintendent Kaplan. *See* Hale Decl.; Exhibits B-D to the Hale Decl.

## CONCLUSION

For the foregoing reasons, the State Defendants' motion is GRANTED, and Plaintiffs' claims against the State Defendants are dismissed in accordance with this opinion. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 25 and 26 and close the case.

Dated:   October 27, 2015
        White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge